# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____

JEROME HYMAN, :
:
        Petitioner, :    Civ. A. No. 14-2995 (BRM)
:
v. :
:
PATRICK NOGAN, et al., :    **OPINION**
:
        Respondents. :
_____ :

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a writ of habeas corpus filed by Petitioner Jerome Hyman ("Petitioner"), a state prisoner proceeding *pro se* with a petition filed pursuant to 28 U.S.C. § 2254. Petitioner also filed a motion for an evidentiary hearing. Having reviewed the submissions filed in connection with the petition and for the reasons set forth below, the petition and motion for an evidentiary hearing are **DENIED** and a certificate of appealability shall not issue.

## I. BACKGROUND

On October 31, 2003, Petitioner was in Lakewood, New Jersey at a local Veterans of Foreign War ("VFW") post when he became involved in a verbal altercation with a man named Shawn Maples ("Maples"). (*See* ECF No. 25-1 at 6.) The verbal altercation escalated in the VFW parking lot. (*See id.*) When Petitioner began to walk away, Maples followed, coming towards Petitioner. (*See id.*) At that point, Petitioner pulled out a loaded pistol from his pocket and fired towards Maples. (*See id.*) The bullet struck the ground. (*See id.*) Despite that first shot, Maples continued to come towards Petitioner and Petitioner again fired his pistol. (*See id.* at 7-8.) Maples was approximately five to six feet away from Petitioner at the time and was struck by the second

bullet. (*See id.*) Maples later died from his injury. (*See id.* at 7) At no time during this altercation did Maples ever exhibit a weapon. (*See id.*)

Petitioner was subsequently charged in a three-count indictment with first-degree murder for knowingly or purposely causing the death of Shawn Maples; second-degree possession of a firearm for an unlawful purpose; and second-degree possession of a weapon by a convicted person. *See State v. Hyman*, Indictment No. 04-09-1530, 2013 WL 3014006, at *1 (N.J. Super. Ct. App. Div. June 19, 2013). Petitioner was also later indicted for second-degree witness tampering. *See id.*

On August 23, 2005, Petitioner agreed to a plea agreement. (*See* ECF No. 25-1; ECF No. 14-1.) Pursuant to the plea agreement, Petitioner pled guilty to an amended charge of first-degree aggravated manslaughter. (*See* ECF No. 14-1 at 1.) In exchange, the State dismissed the remaining charges against Petitioner and recommended to the court that Petitioner serve a twenty-five-year sentence subject to New Jersey's No Early Release Act ("NERA"). *(See id.* at 2-4.) At the plea hearing, Petitioner indicated that he understood all of the terms of the plea agreement, that he was entering into the agreement knowingly and voluntarily, and that he was satisfied with his attorney's representation. (*See* ECF No. 25-1 at 3-5.) When Petitioner's counsel elicited the factual basis for the plea, Petitioner admitted to firing his gun at Maples, but stated that he never intended to shoot him. (*See id.* at 6-7.) On October 14, 2005, Petitioner was sentenced to twenty-five years in prison with a mandatory period of parole ineligibility pursuant to NERA. *See Hyman*, 2013 WL 3014006, at *1.

## II. PROCEDURAL HISTORY

The New Jersey Appellate Division affirmed Petitioner's conviction and sentence on November 14, 2007. *See State v. Hyman*, Indictment No. 04-09-1530, 2013 WL 3014006, at *1

(N.J. Super. Ct. App. Div. June 19, 2013). However, the Appellate Division vacated the order of restitution that the trial court had imposed and remanded the matter for a restitution hearing. *See id.* Upon remand, Petitioner's amount of restitution was reduced to $5,000. *See id.* Petitioner appealed to the New Jersey Supreme Court, but the court denied his petition for certification on May 6, 2008. *See State v. Hyman*, 950 A.2d 906 (N.J. 2008).

On April 1, 2008, Petitioner filed a petition for post-conviction relief ("PCR"). *See id.* at *2. On July 29, 2009, a hearing on the petition was held before the Honorable James Den Uyl, J.S.C. (*See* Dkt. No. 25-2.) Following oral argument, Judge Uyl denied the petition from the bench. (*See id.* at 36.) The Appellate Division affirmed Petitioner's appeal for substantially the same reasons as the PCR court, holding that Petitioner's arguments were "clearly without merit." *See Hyman,* 2013 WL 3014006, at *1, 3.

In early 2014, Petitioner filed the instant habeas action. Respondent filed an answer in opposition, and Petitioner filed a traverse thereafter. In August 2018, Petitioner also filed a motion for an evidentiary hearing, and Respondent subsequently filed an answer in opposition.

### III.   HABEAS CORPUS LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104–132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Federal courts

> may not characterize [] state-court factual determinations as unreasonable "merely because [they] would have reached a different conclusion in the first instance." [. . .] If "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination."

*Brumfeld v. Cain*, 135 S. Ct. 2269, 2277 (2015) (alterations in original) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The petitioner

4

carries the burden of proof and with respect to review under § 2254(d)(1), that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Dennis Sec'y Dep't of Corr.*, 834 F.3d 263, 353 n.10 (3d Cir. 2016) (Jordan, J., concurring in part and concurring in the judgment) (noting that while *Ylst* predates the passage of AEDPA, the *Ylst* presumption that any subsequent unexplained orders upholding the judgment will be presumed to rest upon the same ground is still valid). Additionally, AEDPA deference is not excused when state courts issue summary rulings on claims as "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

**IV. DECISION**

Petitioner's habeas action consists of several ineffective assistance of counsel claims against his plea counsel and direct appeal counsel. The Sixth Amendment of the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n.14

5

(1970)). To prevail on a claim of ineffective assistance, a party must establish that: 1) counsel's performance was deficient; and 2) the petitioner was prejudiced by counsel's deficiency. *See id.* at 687. The first *Strickland* prong is an objective standard which requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. In evaluating whether counsel was deficient, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* The Constitution requires a fair trial, not some higher quality of legal representation. *See id.* at 688-89. Thus, the standard is highly deferential, and counsel is "strongly presumed to have rendered adequate assistance" and to have used "reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

The second prong of the *Strickland* test requires that a petitioner demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The petitioner bears the burden of demonstrating how he was prejudiced. Therefore, where a petition contains "no factual matter . . . and only provides unadorned legal conclusion[s] . . . without supporting factual allegations, that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief." *Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015) (internal quotations and citations omitted).

This two-prong test also governs ineffective assistance of counsel claims arising out of the plea process. *See Hill v. Lockhart,* 474 U.S. 52, 57-59 (1985). In the context of guilty pleas, the first element of the *Strickland* test remains "nothing more than a restatement of the standard of attorney competence." *Id.* at 58. The prejudice prong, on the other hand, requires that a petitioner

6

demonstrate that, "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. Moreover, where a petitioner pleads guilty, he must show not only that he would not have pleaded guilty and would have instead proceeded to trial, but also that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

Significantly, even if a petitioner can establish both prongs of *Strickland*, a habeas corpus petition still fails unless the petitioner can demonstrate that the state court applied *Strickland* in an "objectively unreasonable manner." *See Woodford v. Viscotti,* 537 U.S. 19, 24-25 (2002); *see also* 28 U.S.C. § 2254(d)(1).

### A. Viability of Self-Defense

Petitioner first argues that his plea counsel was ineffective for "misadvising" him that self-defense would not be a viable defense at trial. (*See* ECF No. 5-1 at 23-26.) Petitioner alleges that if he had known he could assert a theory of self-defense, he would not have pleaded guilty. (*Id.* at 26.)

The PCR court rejected this claim, explaining that Petitioner could not prove that he had a valid claim of self-defense. (*See* ECF No. 25-2 at 35-36.) "At best petitioner could hope to argue that the use [of force] was imperfect self-defense meaning that deadly force was mistakenly used," however, the New Jersey Criminal Code "does not provide an independent category of justification, excuse or mitigation under the concept of imperfect self-defense." (*See id.*) The PCR court further held that Petitioner was unable to establish either *Strickland* prong because "petitioner has offered nothing more than a bald assertion that counsel failed to fully investigate a self-defense claim the efficacy of which is undermined by the facts to which petitioner admitted to at his plea hearing." (*Id.* at 36.) The Appellate Division affirmed for substantially the same reasons,

concluding that Petitioner's arguments were "clearly without merit." *See Hyman*, 2013 WL 3014006, at *2-3.

Under the New Jersey Code of Criminal Justice, self-defense is permissible as an affirmative defense and can excuse a defendant from responsibility for a crime if the defendant "honestly and reasonably believed that the use of defensive force was necessary." *State v. Williams*, 774 A.2d 457, 463 (N.J. 2001); *see also* N.J. Stat. Ann. § 2C:3-4. If, however, "a defendant was not reasonable in believing in the need to use defensive force, he could not invoke the affirmative defense of justification because his evidence would be 'imperfect' for that purpose." *Id.* Such claims of imperfect self-defense are not permitted in New Jersey. *Id.* (citing *State v. Branch*, 714 A.2d 918, 924 (N.J. 1998) ("In New Jersey, there is no such defense as imperfect self-defense.")).

In the instant case, as the PCR court aptly stated, there was no indication that Petitioner had a reasonable belief that the use of deadly force was necessary to protect himself from against death or serious bodily injury. (*See* ECF No. 25-2 at 34-35.) Indeed, Petitioner stated at his plea hearing that the victim never exhibited a weapon during their encounter. (*See* ECF No. 25-1 at 7.) The trial judge also indicated that he was disinclined to find that self-defense was appropriate in the case. (*See* ECF No. 27-2 at 4.) At Petitioner's sentencing, plea counsel stated, "My client plead guilty, and he plead guilty on the basis that you [the trial judge] did not believe the self-defense was appropriate as a defense. And you know we had raised that issue." (*Id.*)

Although Petitioner claims he only pled guilty because counsel advised him that self-defense would not be a viable defense at trial, Petitioner has failed to demonstrate that counsel "misadvised" him. Nothing in the record establishes that Petitioner could have reasonably believed deadly force was necessary, which would have enabled him to raise an affirmative self-defense

8

theory. Petitioner even admitted during his plea hearing that he shot at the victim twice, despite the fact he never saw the victim display a weapon. Moreover, if plea counsel informed Petitioner that the trial judge did not view self-defense as a viable option at trial, Petitioner has failed to demonstrate this statement was inaccurate. Petitioner simply has not shown that self-defense would have been a viable option at trial, nor that his counsel was deficient for allegedly informing him that self-defense was not suitable. Accordingly, Petitioner has failed to demonstrate that his counsel was ineffective under the *Strickland* two-prong test, and the state courts' adjudication of this matter was not objectively unreasonable. Petitioner is not entitled to relief on this claim.

### B. Knowingness and Voluntariness of Petitioner's Plea

Petitioner also contends that he did not enter his guilty plea knowingly, intelligently, and voluntarily because his plea counsel failed to explain to him the differences between aggravated manslaughter, reckless manslaughter, and manslaughter. (*See* ECF No. 5-1 at 25.) Petitioner further adds that his plea counsel should have pursued a more favorable plea of either reckless manslaughter or manslaughter.

In denying this claim on PCR, the PCR court held, in relevant part:

> Regarding the first prong of the STRICKLAND/FRITZ test the record shows that the plea entered by petitioner was knowing and voluntary. It's clear he was aware of his rights and freely and voluntarily waived those rights.
>
> Even assuming petitioner's allegations are correct, it cannot be said that counsel was deficient for failing to discuss every potential lesser included offense especially an offense such as reckless manslaughter to the extent that that reckless manslaughter has not been offered by the State during his plea negotiations. His opportunity was to plead guilty to aggravated manslaughter or take his chances and go to trial. He chose to accept freely and voluntarily the plea to aggravated manslaughter.
>
> As far as the second prong, even assuming that counsel did not fully advise petitioner of the specific differences between manslaughter

9

> and aggravated manslaughter, he's unable to show that he was prejudiced as a result.
>
> In order to present a claim of ineffectiveness petitioner must show that but for counsel's actions there's a reasonable probability that he would have refused to enter a guilty plea and would have insisted on going to trial. Here petitioner is unable to show that had he been fully versed on the law of reckless manslaughter he would have insisted on going to trial based upon the mere possibility that he could have been found guilty of a lesser charge thereby risking a potential conviction for first-degree murder; therefore, petitioner's claim in this regard is without merit and unsupported by the record and he's not shown that he's met either the first or second prong of the STRICKLAND/FRITZ test, i.e., that counsel was deficient or assuming he was deficient, that he was prejudiced as a result.

(ECF No. 25-2 at 28-30.)

In order for Petitioner to establish that he suffered prejudice as a result of counsel's alleged failure to explain the difference between the varying degrees of manslaughter, Petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, he would have rejected the plea offer and insisted upon going to trial. *Lafler*, 566 U.S. at 163. However, Petitioner does not indicate that he would have gone to trial if he had been more fully advised of the differences between the offenses. In fact, Petitioner states that his plea counsel should have instead sought a more favorable plea offer of either reckless manslaughter or manslaughter. (*See* ECF No. 5-1 at 30.) Moreover, Petitioner is unable to demonstrate that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. As the PCR court stated and Petitioner's PCR counsel admitted, reckless manslaughter was not a "third option" for Petitioner. (*See* ECF No. 25-2 at 6.) Petitioner either accepted the offer to plead guilty to aggravated manslaughter or "his only other option was to go to trial" for first-degree murder and other related charges. (*See id.*)

Accordingly, Petitioner simply has not shown that but for plea counsel's alleged failure to explain difference between the varying degrees of manslaughter that he would have rejected the plea offer, or even that such a decision would have been rational decision under the circumstances. Therefore, this Court cannot find that the state courts' adjudication of this matter was objectively unreasonable. Petitioner is not entitled to relief on this claim.

### C. Plea Counsel's Failure to Investigate

Petitioner also raises several claims against his plea counsel for failure to investigate. Specifically, Petitioner contends that plea counsel failed to investigate potentially exculpatory witnesses, failed to investigate the fact that Petitioner "never intended to shoot" the victim, and failed to investigate the cause of the victim's death.

While a failure to investigate potentially exculpatory evidence or witnesses can form the basis of ineffective assistance of counsel, a failure to investigate claim still requires a petitioner to demonstrate that he was prejudiced. *See Strickland,* 466 U.S. at 690-91; *see also Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016). To successfully establish this claim, a petitioner "must make a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained . . . and whether such information, assuming admissibility in court, would have produced a different result." *Id.* (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (internal quotation marks omitted)). Additionally, where a petitioner merely speculates as to what a witness might have said if interviewed by counsel but fails to present sworn testimony from that witness, a petitioner cannot establish the prejudice prong of *Strickland*. *See Duncan v. Morton*, 256 F.3d 189, 202 (3d Cir. 2001).

### i.     *Exculpatory Witnesses*

Petitioner alleges that plea counsel never interviewed witnesses that would have corroborated Petitioner's claim of self-defense. (*See* ECF No. 5-1 at 25.) Petitioner claims that these witnesses would have testified that "the victim had exhibited assaultive conduct in the past, was in possession of a firearm around the time of the shooting and that [the victim] and [petitioner] had exchanged words prior to the [petitioner] shooting the victim." (*See* ECF No. 25-2 at 33.) Petitioner asserts that if these witnesses had testified before a jury, that there is a reasonable likelihood that Petitioner would have been acquitted. (*See id.* at 33-34.)

The PCR court rejected this claim, explaining that Petitioner failed to offer certifications from any of these witnesses detailing their proposed testimony. (*See id.* 33.) The PCR court stated that, without these certifications, Petitioner's claim was no more than a bald assertion. (*See id.* at 34.) The court also went on to explain that "even if believed, the proposed testimony of these witnesses lack any indications that defendant had a reasonable belief that the use of deadly force was necessary . . . . The proposed testimony further fails to explain how or why petitioner was unable to retreat prior to using deadly force." (*Id.* at 34-35.)

Here, in the absence of any sworn statements, Petitioner is merely speculating as to what information plea counsel would have been obtained if he had interviewed the alleged witnesses. *Duncan*, 256 F.3d at 202. However, as the PCR court emphasized, even if the alleged witness information were to be believed, the information does not indicate that Petitioner had a reasonable belief that deadly force was necessarily to protect himself against death or bodily injury, nor does it explain why Petitioner was unable to retreat prior to using deadly force. The alleged witnesses simply "do[] not support a valid claim of self-defense." (*See* ECF No. 25-2 at 36.) Accordingly, Petitioner is unable to demonstrate that the result of his proceedings would have been different if

plea counsel had further investigated the supposed witnesses. Given the absence of evidence to support his claim, this Court cannot find that the state courts' adjudication of this matter was objectively unreasonable.

      ii.      *Victim's Cause of Death*

Petitioner also asserts that plea counsel was ineffective for failing to investigate the "issue of causation" of the victim's death. (*See* ECF No. 5-1 at 25.) Specifically, Petitioner appears to be alleging that since the autopsy report did not identify the bullet as the "cause of [the victim's] lacerations or perforations," that the victim's death may have been caused by other circumstances. (*See id.*)

When Petitioner raised this claim during his PCR proceedings, the PCR court held, in pertinent part:

> Here petitioner has offered four pages of medical documents related to the victim Shawn Maples [to support his claim]. One of the documents is an operative report, the other is a discharge summary. *The operative report indicates the victim suffered a gunshot wound to the abdomen, hypovolemic shock, cardiorespiratory arrest, disseminated intravascular coagulation, laceration to the iliac vein and artery, perforation of the colon*. The petitioner has offered no independent ballistic evidence or additional records. The petitioner has offered nothing more than a bald assertion that additional investigation would have altered the result.
>
> In his factual basis petitioner stated that he fired twice in the vicinity of the victim but never intended that he be struck by a bullet. He testified he was five to six feet away when he discharged his weapon. Those facts are sufficient to support the elements of aggravated manslaughter. The petitioner has not established why counsel was deficient or how additional information or use of forensics would have changed the outcome or given rise to a reasonable probability that had counsel done so, he would have insisted on going to trial. For these reasons petitioner's claim in this regard are without merit and unsupported by the record.

(ECF No. 25-2 at 31-32 (emphasis added).)

13

Petitioner has failed to put forth any evidence that the victim's death was not caused by injuries sustained from a gunshot wound. Petitioner only baldly asserts that if plea counsel had investigated the victim's cause of death that he *may* have discovered the victim did not die as a result of being shot. This bare assertion does not demonstrate that plea counsel was deficient for not conducting additional investigating into the victim's cause or death, nor does it state what plea counsel would have discovered if he had further investigated. Moreover, nowhere does Petitioner allege that the result of his proceedings would have been different if plea counsel had investigated. Therefore, without having provided any support for his claim, this Court cannot find that the state courts' adjudication of this claim was objectively unreasonable. Petitioner is not entitled to relief on this claim.

      iii.    *Petitioner's Intent to Kill*

Petitioner next contends that plea counsel did not investigate the claim that Petitioner "never intended to shoot" the victim. (*See* ECF No. 5-1 at 25.) Again, however, Petitioner provides no more than the bald assertion that, "Counsel never investigated petitioner's claim that he never intended to shoot Maples, that he merely meant to stop Maples from advancing." (*Id.* at 27.)

During PCR proceedings, the court held, "petitioner argues that because he did not intend to shoot the victim, he was not employing deadly force; however, at the plea the petitioner testified that he fired twice at the victim and he was standing within five or six feet of [the] victim. Firing a handgun in close proximity to another and aimed near him is clearly the use of deadly force." (ECF No. 25-2 at 35.) Indeed, during Petitioner's plea colloquy he maintained that he never intended to shoot the victim, but he did recognize that by firing his loaded gun in the victim's direction, that he was acting recklessly and with extreme indifference to the value of human life. (*See* ECF No. 25-1 at 6-7.)

Petitioner was convicted under N.J. Stat. Ann. § 2C:11-4(a)(1), which states that a defendant is guilty of aggravated manslaughter when he "recklessly causes death under circumstances manifesting extreme indifference to human life." N.J. Stat. Ann. § 2C:11-4(a)(1). In determining whether a defendant has manifested extreme indifference to human life, "the focus is *not on the defendant's state of mind*, but on the circumstances under which the defendant acted." *State v. Wilder,* 939 A.2d 781, 787 (N.J. 2008) (quoting Cannel, *New Jersey Criminal Code Annotated*, cmt. 2 on N.J. Stat. Ann. § 2C:11-4 (2007)) (emphasis added).

Here, Petitioner's alleged lack of intent to shoot the victim is irrelevant, since aggravated manslaughter does not focus on the perpetrator's state of mind. *See Wilder*, 939 A.2d at 787. Petitioner makes an unadorned allegation that plea counsel should have investigated his lack of intent, but Petitioner fails to demonstrate what information plea counsel would have discovered. Petitioner also fails to demonstrate that how the result of his proceedings would have been different had plea counsel investigated his lack of intent. Accordingly, without any evidence regarding what plea counsel would have discovered if he had investigated the matter further, this Court cannot find that the state courts' decision to deny this claim was unreasonable.

### D. Ineffective Assistance of Appellate Counsel

Petitioner also raises an ineffective assistance of counsel claim against his appellate counsel for failing to argue on direct appeal that Petitioner's guilty plea was not supported by an adequate factual basis. (*See* ECF No. 5-1 at 30-31.) Petitioner contends that the factual basis elicited provided "no factual support for the requisite elements of aggravated manslaughter." (*See id.* at 31.)

The *Strickland* test for effective assistance of counsel also applies to the performance of appellate counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). Generally, appellate

counsel has no obligation to raise every claim on direct appeal. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000); *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). The decision of which issues to raise on appeal is a strategic choice, and appellate counsel is not required to raise every possible issue. *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). The chief component of effective appellate advocacy is the winnowing out of weaker claims in favor of those with a greater chance of success. *See Jones*, 463 U.S. at 753. Therefore, in the instant case, Petitioner's appellate counsel had no obligation to argue that Petitioner's plea was not supported by an adequate factual basis.

However, even if appellate counsel had raised this argument, the claim is still without merit, as Petitioner *did* provide an adequate factual to support his conviction for aggravated manslaughter. Pursuant to New Jersey law, an individual commits aggravated manslaughter when he "recklessly causes death under circumstances manifesting extreme indifference to human life." N.J. Stat. Ann. § 2C:11-4(a)(1). A defendant acts sufficiently reckless to support a conviction for aggravated manslaughter when the defendant is aware that "it [wa]s probable that death [would] result from [his] conduct." *State v. Galicia*, 45 A.3d 310, 318 (2012).

The conduct to which Petitioner admitted during his plea colloquy clearly supported his conviction for aggravated manslaughter. Specifically, during that colloquy, Petitioner admitted that he knew it was reckless to bring a loaded gun to the VFW parking lot and to fire that gun in the direction of the victim. (*See* ECF No. 25-1 at 6.) Petitioner also admitted that he understood that firing his gun towards the victim demonstrated extreme indifference towards human life. (*Id.* at 7). As the PCR court held:

> [T]he crime was fully established by the factual basis during the plea. The factual basis, i.e., the firing of the handgun in the direction of the victim on two occasions when the victim was five to six feet

16

> away would clearly support a finding of aggravated manslaughter
> and circumstances manifesting extreme indifference to human life.

(ECF No. 25-2 at 27.) Petitioner therefore provided an adequate factual basis to support his guilty plea, and any appeal regarding the sufficiency of the factual basis would have been meritless. Accordingly, Petitioner is not entitled to relief on this claim.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner fails to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability shall not issue.

## VI. CONCLUSION

For the reasons stated above, the Petition for habeas relief is **DENIED**, the motion for an evidentiary hearing is **DENIED**, and a certificate of appealability shall not issue.

DATED: March 27, 2019

*/s/Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**